UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RANDY NEVER MISSES A SHOT,<br><br>Defendant. | **3:13-CR-30013-RAL**<br><br>**OPINION AND ORDER ON MOTION<br>FOR COMPASSIONATE RELEASE** |

A federal grand jury returned a superseding indictment charging Randy Never Misses A Shot (Never Misses A Shot) with one count of aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A); one count of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(3); one count of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D); one count of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3); and one count of abusive sexual contact while registered as a sex offender in violation of 18 U.S.C. § 2260A. Doc. 20. This Court held a jury trial from September 10 to September 12, 2013, and the jury found Never Misses A Shot guilty on all five counts of the superseding indictment. Docs. 107, 108, 114, 109 at 9–10.

On January 14, 2014, this Court held a sentencing hearing in Never Misses A Shot's case and imposed a custody sentence of 144 months on count one; 30 months on count two, to be served concurrent to count one; 144 months on count three, to be served consecutive to count one and two; 324 months on count four, to be served concurrent to counts one, two, and three; and 120 months on count five, to be served consecutive to count four. Docs. 118 at 2; 120 at 2. The effect

of the sentence was a custody period of 444 months. The Court imposed five years of supervised release on counts one, three, and four, and three years of supervised release on counts two and five, all to be served concurrent. Docs. 118 at 2; 120 at 3.

Never Misses A Shot is currently incarcerated at United States Penitentiary Tucson (USP Tucson) and has filed a pro se motion for compassionate release, citing his health conditions in combination with the global COVID-19 pandemic as justification. Doc. 141. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has submitted a supplement to Never Misses A Shot's motion, and the Government has responded in opposition. Docs. 149, 151. FPD has replied. Doc. 153. This Court has considered Never Misses A Shot's motion, and for the reasons stated herein, denies his motion at this time.

## I.     Background

Never Misses A Shot's conviction resulted from numerous sexual assaults he perpetrated on minor victims between 1993 to 2007. PSR at ¶¶ 5, 9–11. The facts relating to the incident are disturbing, and the crimes had severe, lasting effects on the victims. See Doc. 145 at 3.

J.N.M.A.S. is Never Misses A Shot's niece. Doc. 114 at 50. Between January 1, 1993, and December 31, 1997, J.N.M.A.S. was residing with her foster parents on the Rosebud Sioux Indian Reservation. PSR at ¶¶ 5, 9. Cecil Little Thunder also resided at the foster home. PSR at ¶ 9. Willard Fool Bull drove J.N.M.A.S. to the woods in his pickup truck to pick sage. PSR at ¶ 9. Never Misses A Shot and Little Thunder were also present. PSR at ¶ 9. While in the woods, Fool Bull, Never Misses A Shot, and Little Thunder had sexual intercourse with J.N.M.A.S. PSR at ¶ 9; Doc. 114 at 52–54. The three adult males would "take turns" having sex with J.N.M.A.S. Doc. 114 at 53–54. This occurred on multiple occasions. PSR at ¶ 9. Also, Never Misses A Shot would visit J.N.M.A.S. two times a week at her foster home. PSR at ¶ 9. Every time Never Misses

2

A Shot visited J.N.M.A.S., he would sexually abuse J.N.M.A.S. by touching her vagina, buttocks, and breast over and underneath her clothing. PSR at ¶ 9; Doc. 114 at 51. At the time J.N.M.A.S. was sexually abused and assaulted by Never Misses A Shot, she was 9 or 10 years old. PSR at ¶ 9.

Between April 1, 2000, and September 30, 2000, Never Misses A Shot sexually abused P.S. PSR at ¶¶ 5, 10. P.S. is Never Misses A Shot's niece. Doc. 114-1 at 64. P.S. lived in Mission, South Dakota, with her grandmother, Mary Stewart. PSR at ¶ 10. Never Misses A Shot also lived at the residence. PSR at ¶ 10. One morning, P.S. went to the kitchen and Never Misses A Shot grabbed her leg and pulled her onto his bed in the living room. PSR at ¶ 10. Never Misses A Shot touched P.S.'s vagina. PSR at ¶ 10. P.S. was 5 years old at the time of the sexual abuse. PSR at ¶ 10.

Between May 12, 2007, and May 15, 2007, Never Misses A Shot had abusive sexual contact with K.I.S. PSR at ¶¶ 5, 11. In Pine Ridge, South Dakota, Never Misses A Shot took K.I.S. behind a residence and underneath a truck bed topper. PSR at ¶ 11. Never Misses A Shot got on top of K.I.S. and moved back and forth. PSR at ¶ 11. K.I.S. felt Never Misses A Shot's penis on her vagina through her clothing. PSR at ¶ 11. The sexual contact lasted between ten and fifteen minutes. PSR at ¶ 11. At the time of the sexual contact, K.I.S. was 6 years old. PSR at ¶ 11.

Under the sentencing guidelines, Never Misses A Shot's combined total offense level for these offenses was 37, and Never Misses A Shot was in criminal history category VI. PSR at ¶¶ 50, 82–83, 110. This meant that Never Misses A Shot's advisory guideline range was 360 months to life in custody for counts one through four. PSR at ¶ 110. For count five, there was a mandatory minimum imprisonment sentence of 10 years, which had to be imposed consecutively, because

3

Never Misses A Shot was required to register as a sex offender at the time he committed the crimes. PSR at ¶¶ 109–10. This Court held a sentencing hearing in Never Misses A Shot's case on January 14, 2014. Doc. 118. After hearing argument from both parties as to the appropriate sentence and hearing from Elizabeth Iron Shell, a family member of a victim in the case, this Court sentenced Never Misses A Shot to 444 months in custody followed by a five-year term of supervised release. Docs. 118 at 2; 120 at 2–3. Never Misses A Shot has been in custody since October 18, 2012, and is currently incarcerated at USP Tucson. Docs. 11; 144 at 331; PSR at ¶¶ 1, 7; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 14, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions (heart failure, coronary artery disease, or cardiomyopathies), sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions /people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov %2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 9, 2020).

Never Misses A Shot currently suffers from the following medical conditions: old myocardial infarction (heart attacks in 1989 and 1998) and left bundle branch hemiblock. Doc.

4

144 at 1.  He has now filed a motion for compassionate release with this Court based on those conditions and the increased susceptibility to complications to COVID-19 he faces if he contracts the disease.  Doc. 141.

## II.     Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances.  18 U.S.C. § 3582(c).  The compassionate release statute, as amended by the First Step Act of 2018, provides one of those narrow avenues through which a sentence may be modified.  The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).  "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020).  Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted.  See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

## III.    Discussion

Never Misses A Shot submitted a request for compassionate release to the warden of his institution on July 20, 2020, outlining some of his medical conditions and his possible release plan.

5

Doc. 143 at 1. Never Misses A Shot's request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Never Misses A Shot's behalf. Therefore, this Court may entertain Never Misses A Shot's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c); United States v. Moore, 963 F.3d 725, 727 (8th Cir. 2020). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. At sentencing, Never Misses A Shot was classified as a career offender. PSR at ¶¶ 82–83, 110. Never Misses A Shot had a prior state conviction of sexual contact with a child under 16 years from 1997 and a prior federal conviction of abusive sexual contact from 1998. PSR at ¶¶ 60, 68. Additionally, the nature and circumstances of the offenses are detailed above and are disturbing. Those facts, along with Never Misses A Shot's criminal history points, resulted in a 360 months to life guideline range under the sentencing

6

guidelines for counts one through four and a mandatory minimum of 10 years, which had to be imposed consecutive, for count five. A sentence within the guideline range like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offenses and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 444-month sentence was designed to protect the public and to provide Never Misses A Shot with sex offender treatment in an effective manner. Doc. 120 at 2. Third, given the number of victims sexually abused by Never Misses A Shot during his life, the Court was very concerned about ensuring protection of the public. Overall, the 444-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Never Misses A Shot has now served approximately 20% of his full sentence and has served approximately 24% of his "statutory term." Doc. 144 at 335. Since he entered BOP custody, Never Misses A Shot, now age 56, has completed some education courses, including custodial maintenance and basic nutrition, and is enrolled in the GED program. Doc. 144 at 331. He has five discipline reports, and his assigned work detail is inconsistent. Doc. 143 at 36, 39–40.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a

"catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Never Misses A Shot argues primarily that he qualifies for release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D), but argues in the alternative that he would qualify under comment note 1(A)(ii). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Never Misses A Shot does not claim that it is his serious physical or medical conditions that makes him unable to provide

self-care in his correctional facility. Rather, he argues that the conditions of confinement, a factor

not contemplated by the comment note, make it difficult or impossible to practice the type of self-

care recommended by the CDC. Therefore, Never Misses A Shot cannot establish "extraordinary

and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Never Misses A Shot's circumstances under the "catch all

provision." Never Misses A Shot argues that his underlying health conditions combined with the

increased risks he faces if he contracts COVID-19 establish an "extraordinary and compelling"

reason other than those specifically identified to justify a sentence reduction. The COVID-19

pandemic has impacted this country and its economy in extraordinary ways. However, "the mere

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release, especially considering BOP's statutory role,

and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954

F.3d 594, 597 (3d Cir. 2020).

USP Tucson currently has zero active cases of COVID-19 among the inmates and one

active COVID-19 case among the facility's staff; one inmate and six staff have recovered from the

illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of

Prisons https://www.bop.gov/coronavirus/ (last visited Sept. 14, 2020). The question becomes

whether Never Misses A Shot's medical conditions—old myocardial infarction and left bundle

branch hemiblock—combined with the conditions of confinement during the COVID-19 pandemic

justify compassionate release.

It is true that the CDC has recognized that people with serious heart conditions, such as

heart failure, coronary artery disease, cardiomyopathies, or pulmonary hypertension, are at an

increased risk of severe illness if they contract COVID-19. See People with Certain Medical

Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3 A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 9, 2020). Never Misses A Shot had a heart attack in 1989 and a second heart attack in 1998. Doc. 144 at 1. This Court was well aware of Never Misses A Shot's history of heart issues when sentencing him to 444 total months of custody. Never Misses A Shot has not had another heart attack since 1998. Doc. 144 at 1. While in BOP custody, Never Misses A Shot takes aspirin daily. Doc. 144 at 5, 297, 307. In 2015, Never Misses A Shot had an EKG that showed a left bundle branch block. Doc. 144 at 61–62. Both of Never Misses A Shot's heart conditions are monitored at his chronic care visits. Doc. 144 at 3, 4, 195, 237, 241–42. Also, nowhere in Never Misses A Shot's medical records is his heart condition described as coronary artery disease or any of the other heart conditions listed on the CDC's list. There is nothing more to suggest that Never Misses A Shot is at elevated risk for COVID-19 contraction or death or great harm therefrom, and the BOP facility housing Never Misses A Shot has had very few cases.

Never Misses A Shot has served about 20% of his 444-month sentence for sexually abusing three young children over the span of 10 years during a time when he was a registered sex offender based on two prior convictions for sex crimes. The original sentence was chosen with care, considering all the applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing and would disserve the interests of justice.

## IV.   Conclusion and Order

Therefore, it is hereby

ORDERED that Never Misses A Shot's motion for compassionate release, Doc. 141, is denied.


DATED this _14th_ day of September, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

11